644 A.2d 1245

**COMMONWEALTH of Pennsylvania**

v.

**William PARKER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 30, 1994.

Filed July 14, 1994.

Quentin Brooks, Philadelphia, for appellant.

William R. Toal, III, Asst. Dist. Atty., Havertown, for Com., appellee.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge.

William Parker was tried by jury and was found guilty of aggravated assault and possession of an instrument of crime.[1] Post-trial and supplemental post-trial motions were denied, and Parker was sentenced to serve concurrent terms of imprisonment for not less than ninety-three (93) months and not more than sixteen (16) years for aggravated assault and not less than six (6) months nor more than two (2) years for possession of an instrument of crime. On direct appeal from the judgment of sentence, Parker argues that the evidence

---

1. He was acquitted on a charge of attempted murder.

was insufficient to support his convictions, and, alternatively, that the guilty verdicts were contrary to the weight of the evidence. He also argues that the decision of the Pennsylvania Supreme Court in *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), which was decided while his post-trial motions were pending, is applicable to require a new trial because two prior inconsistent statements by Commonwealth witnesses were improperly received as substantive evidence against him.

On May 30, 1990, at or about 11:00 o'clock, p.m., Stanley Newell was standing, in the company of several friends, in front of the Pizza Paradise Restaurant in Yeadon, Delaware County, when a white Mustang pulled up to the curb. The driver of the vehicle was a black male, who was identified at trial as William Parker; and one of the occupants of the vehicle was Newell's cousin. When Newell said to the driver, "Take care of my Cuz," the driver heatedly responded, "Man, you don't know who you are messing with." After an additional exchange, the vehicle and its occupants left the scene.

About three-quarters of an hour later, Parker returned to the pizza shop on foot, carrying a large black gun. With this gun, he fired several shots at Newell, striking him once in the chest. Newell was the beneficiary of emergency surgery and survived after being hospitalized for several days.

Newell could not be found at the time of trial and did not testify against Parker. However, Chad Robinson, an eyewitness, identified Parker as the driver of the white Mustang and also as the person who had shot Newell. Two other persons present at the scene of the shooting refused to identify Parker as the assailant. Therefore, Detective William Costello, who had investigated the shooting, was allowed to testify to oral statements made by the witnesses that appellant was the driver of the white Mustang who had had an argument with Newell and who had returned to do the shooting.

Appellant has incorrectly treated the sufficiency of the evidence and the weight of the evidence as a single issue.

These are discrete inquiries. The proper procedure to challenge the sufficiency of the evidence is by a post-verdict motion in arrest of judgment. *Commonwealth v. Holmes*, 315 Pa.Super. 256, 260, 461 A.2d 1268, 1270 (1983). In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Madison*, 501 Pa. 485, 490, 462 A.2d 228, 231 (1983); *Commonwealth v. Shaver*, 501 Pa. 167, 169, 460 A.2d 742, 743 (1983); *Commonwealth v. Sample*, 321 Pa.Super. 457, 461–462, 468 A.2d 799, 801 (1983); *Commonwealth v. Curry*, 318 Pa.Super. 490, 494, 465 A.2d 660, 662 (1983). The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence. *Commonwealth v. Smith*, 502 Pa. 600, 604, 467 A.2d 1120, 1122 (1983); *Commonwealth v. Nelson*, 320 Pa.Super. 488, 491, 467 A.2d 638, 640 (1983); *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 132, 463 A.2d 1117, 1120 (1983); *Commonwealth v. Owens*, 315 Pa.Super. 400, 404, 462 A.2d 255, 257 (1983); *Commonwealth v. Nunez*, 312 Pa.Super. 584, 586, 459 A.2d 376, 376–377 (1983).

A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion. *Commonwealth v. Zapata*, 447 Pa. 322, 327, 290 A.2d 114, 117 (1972); *Commonwealth v. Ruffin, supra*, 317 Pa.Superior Ct. at 133, 463 A.2d at 1120; *Commonwealth v. Brown*, 314 Pa.Super. 311, 322, 460 A.2d 1155, 1161 (1983); *Commonwealth v. Starks*, 298

Pa.Super. 213, 216, 444 A.2d 736, 738 (1982). The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Sample, supra,* 321 Pa.Superior Ct. at 465, 468 A.2d at 802; *Commonwealth v. Barnhart,* 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981). See: *Commonwealth v. Jensch,* 322 Pa.Super. 304, 315, 469 A.2d 632, 638 (1983).

*Commonwealth v. Taylor,* 324 Pa.Super. 420, 424–425, 471 A.2d 1228, 1229–1230 (1984).

█ In determining the sufficiency of the evidence, we do not review a diminished record. The law is clear "that in determining the sufficiency of the evidence to support the verdict, we are required to consider all evidence actually received, whether the trial court's rulings on evidence were correct or incorrect." *Commonwealth v. Pankraz,* 382 Pa.Super. 116, 119–120, 554 A.2d 974, 976 (1989). See also: *Commonwealth v. Smith,* 523 Pa. 577, 582, 568 A.2d 600, 602–603 (1989); *Commonwealth v. DiSabatino,* 399 Pa.Super. 1, 4, 581 A.2d 645, 646 (1990). "Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial." *Commonwealth v. Smith, supra,* 523 Pa. at 582, 568 A.2d at 603.

Instantly, the testimony of Chad Robinson unequivocally identified appellant as the person who had shot Stanley Newell in the chest. Robinson's testimony, although alone sufficient to sustain appellant's convictions, was corroborated by prior, extra-judicial statements which had been made by Commonwealth witnesses Stacey Scott and Anthony Blunt. These statements were received as substantive evidence pursuant to *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986). The total evidence, when viewed in the light most favorable to the Commonwealth, was clearly sufficient to sustain appellant's convictions.

We also reject appellant's contention that the jury's verdicts were contrary to the weight of the evidence. "Where the evidence is conflicting, the credibility of the witnesses is solely for the jury, and if its finding is supported by the record, the trial court's denial of a motion for a new trial will not be disturbed." *Commonwealth v. Larew*, 289 Pa.Super. 34, 37, 432 A.2d 1037, 1038 (1981). The trial court's sense of justice was not shocked by the findings of the jury in this case, and our review of the record discloses no abuse of discretion by the trial court in making such a determination.

At trial, Stacey Scott testified that he was present at the time of the shooting but did not see the gunman. He was then confronted with a statement which he had made to Detective Costello shortly after the shooting in which he had identified appellant as the perpetrator. Scott explained at trial that the information which he had given to Costello had been based upon what other people had told him. He also said that his prior statement, as memorialized by Detective Costello, had not been "written the way I said it to him that night." Anthony Blunt testified at trial that appellant had been the person with whom the victim had had an argument prior to the shooting, but he said that he had not been able to get a good look at the person who had done the shooting and was not able to identify appellant as the person who had shot Stanley Newell. Blunt was also confronted with a prior statement made to Detective Costello shortly after the shooting, in which he had said that the same person who had argued with the victim had returned later to the pizza shop and had shot Newell. Blunt denied that he had made such a statement to Detective Costello.

The Commonwealth was also permitted to have Costello, over defense objection, read into evidence his notes regarding the statements which had been made to him by Stacey Scott and Anthony Blunt. The defense argued that because these statements were not verbatim recordings of what the witnesses had said and were not signed by the witnesses, the statements were not given under sufficiently reliable circumstances to justify their admission as substantive evidence.

The trial court overruled defense objections to the receipt of the prior inconsistent statements and, with respect thereto, instructed the jury as follows:

Now, you may consider and use a statement given by a witness at this trial, which statement was made prior to trial, which is inconsistent with his trial testimony, not only to evaluate that witness's testimony, or that witness's credibility, but also as substantive evidence to prove the truth of the matters asserted in the earlier statement. If that statement was rendered under reliable circumstances, assuring voluntariness, knowledge, and understanding. Now it's for you, the jury, to determine which of the two inconsistent statements, that is the statement prior to trial, and the testimony at trial you will accept as the factual statement, if either.

In *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), the Pennsylvania Supreme Court rejected the long-standing rule that a witness's prior inconsistent statements can only be used for purposes of impeaching the credibility of the testimony given by the witness at trial. The Supreme Court held "that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein." *Id.* at 131, 507 A.2d at 70.

Six years after its decision in *Brady*, while appellant's post-trial motions were pending in the instant case, the Supreme Court decided *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), in which it refined its holding in *Brady* in the following manner:

[T]he important components of the *Brady* rule are that otherwise admissible prior inconsistent statements be given under highly reliable circumstances and the non-party declarant be subject to cross-examination in the proceeding where the prior statement is to be admitted.

. . . .

Although the statement of the holding in *Brady* was that "otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein," 510 Pa. at 131, 507 A.2d at 70, we noted that Ms. Traxler's tape recorded statement was rendered under highly reliable circumstances assuring that it was voluntary, knowing and understanding. Those highly reliable circumstances included Ms. Traxler's attorney and her mother being present when Ms. Traxler gave her statement to police. In addition, Ms. Traxler's attorney questioned both Ms. Traxler and her mother to assure that the statement was being given knowingly, voluntarily and with understanding of her rights and options. Furthermore, her statement was recorded verbatim contemporaneously with its making. *Commonwealth v. Brady*, 510 Pa. at 131–32, 507 A.2d at 70.

In an effort to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements. See Note, Substantive Admissibility of a Non–Party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View, 32 Vill.L.Rev. 471 (1987).

*Commonwealth v. Lively, supra,* 530 Pa. at 469–471, 610 A.2d at 9–10. See also: *Commonwealth v. Reid,* 533 Pa. 508, 514–515, 626 A.2d 118, 121 (1993); *Commonwealth v. Burgos,* 530 Pa. 473, 478–479, 610 A.2d 11, 14–15 (1992).

Instantly, the prior inconsistent statements made by Commonwealth witnesses Stacey Scott and Anthony Blunt had not been given under oath at a formal legal proceeding, had not been contemporaneously recorded in a verbatim manner at the time they were made, and had not been reduced to writing

and signed by the witnesses. According to the testimony of Detective Costello, he had summarized the statements made by Scott and Blunt by paraphrasing what the witnesses had told him. The witnesses were not then given the opportunity to make corrections to and/or sign the detective's notes. Under *Lively*, therefore, Costello's recollections of the witnesses' statements were not admissible as substantive evidence.

The Commonwealth argues, however, that *Lively* should not be given retroactive application. With respect to whether a judicial decision should be applied retroactively or prospectively, the Pennsylvania Supreme Court has said:

> The general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision. *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983). This principle applies with equal force to both civil and criminal proceedings. *Id.; Commonwealth v. Brown*, 494 Pa. 380, 431 A.2d 905 (1981). This means that we adhere to the principle that, "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occurs before the judgment becomes final." *Commonwealth v. Brown, supra*, 494 Pa. 383, 431 A.2d at 906–07, citing *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981).

*Blackwell v. Commonwealth, State Ethics Commission*, 527 Pa. 172, 182, 589 A.2d 1094, 1099 (1991).[2] The Court in *Blackwell*, however, also declared that "although retroactivity is the general rule, a sweeping rule of retroactive application is not justified. Retrospective application is a matter of judicial discretion which must be exercised on a case by case basis." *Blackwell v. Commonwealth, State Ethics Commission, supra*. See also: *August v. Stasak*, 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981). In making this determination, courts should consider: "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the

---

**2.** The general rule of retroactive application assumes, of course, that "the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).

effect on the administration of justice by the retroactive application of the new rule." *Blackwell v. Commonwealth, State Ethics Commission, supra,* 527 Pa. at 183, 589 A.2d at 1099, citing *Desist v. United States,* 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248, 255 (1969) and *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967). See also: *Commonwealth v. Miller,* 490 Pa. 457, 472, 417 A.2d 128, 136 (1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981); *Hill v. Thorne,* 430 Pa.Super. 551, 559, 635 A.2d 186, 190 (1993). "Where the purpose of the new standard affects the truth finding function, thereby raising serious questions about the accuracy of prior guilty verdicts, the new rule has been given complete retroactive effect." *Commonwealth v. McCormick,* 359 Pa.Super. 461, 471, 519 A.2d 442, 447 (1986), citing *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395 (1971). See also: *Commonwealth v. Miller, supra; Commonwealth v. Flis,* 369 Pa.Super. 275, 285–286, 535 A.2d 157, 161–162 (1987).

The Pennsylvania Supreme Court has further observed that:

Judicial decisionmaking inherently requires courts to re-solve conflicts after they arise. See P. Mishkin, The High Court, The Great Wit and Due Process of Time and Law, 79 Harv.L.Rev. 56, 60 (1962). As Justice Holmes observed: "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (dissenting opinion). Only recently have courts limited the full effect of their decisions. See e.g. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977); see generally P. Mishkin, The High Court, *supra;* R.J. Aldisert, The Judicial Process 877–938 (1976). The prime impetus behind this occasional willingness not to give a decision full effect is the concern that a novel decision will unfairly prejudice those formerly advantaged by the old rules. See e.g. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (decision on statute of limitations applied

in limited fashion to avoid bar on tort recovery); *Cipriano v. Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (decision striking down bond law applied in limited fashion to avoid "injustice or hardship" to cities and bondholders); *England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (holding that state adjudication of federal claims is res judicata in subsequent federal court action applied in limited fashion to avoid undue prejudice to plaintiffs).

*Gibson v. Commonwealth*, 490 Pa. 156, 163–164, 415 A.2d 80, 84 (1980) (footnote omitted). It has been held, therefore, that prospective application of judicial decisions is warranted only when all of the following conditions are met:

(1) the decision establishes a new principle of law by either overruling clear past precedent or involves an issue of first impression, the resolution of which was not clearly foreshadowed, (2) the merits of purely prospective application of the new decision outweigh the disadvantages, based on the history of the rule in question, its purpose and effect, and whether a retrospective application would retard operation of the new law, and (3) the inequity of a retroactive application of the new rule outweighs the benefit of such an application.

*Batoff v. Commonwealth, Bureau of Professional and Occupational Affairs*, 158 Pa.Commw. 267, 271, 631 A.2d 781, 783 (1993), citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971). See also: *Blackwell v. Commonwealth, State Ethics Commission, supra* at 184–185, 589 A.2d at 1100; *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 622 & n. 6, 375 A.2d 1285, 1289 & n. 6 (1977).

In this case, the appellant repeatedly argued at trial and in post-trial motions that Costello's recollections of prior, oral statements made by the witnesses were not sufficiently reliable and trustworthy to be received as substantive evidence. This issue, therefore, clearly has been preserved for appellate review. In accordance with the general rule followed in Pennsylvania, our review of this evidentiary issue must be

conducted in the light of the precedent established by the Supreme Court in *Commonwealth v. Lively, supra.* The *Lively* decision did not announce a new rule of law or break with clearly established precedent. It did no more than clarify the Court's prior holding in *Commonwealth v. Brady, supra.* The Court's purpose in *Lively* was to enhance the truth determining process by requiring that only statements made under circumstances calculated to insure their reliability and trustworthiness should be received as substantive evidence. Finally, there certainly can be no inequity in applying *Lively* to cases pending on direct appeal in which the issue has been raised and preserved for appellate review. In effect, appellant will receive no more than a proper application of the law regarding the use of prior inconsistent statements as substantive evidence. To this he is entitled, no more and no less. See: *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981).

We hold, therefore, that *Commonwealth v. Lively, supra,* has application. The prior statements of Stacey Scott and Anthony Blunt were improperly received and considered by the jury as substantive evidence. Because of this error, it is necessary to reverse the judgment of sentence and remand for a new trial.[3]

Reversed and remanded for a new trial.

---

3. The admission of the prior inconsistent statements of Stacey Scott and Anthony Blunt cannot be deemed harmless error. Indeed, during closing argument, the prosecuting attorney characterized this evidence as crucial, and, with respect thereto said, "There is no more important evidence in the case than came from these statements."