669 A.2d 346

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph H. METTS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1995.

Filed Dec. 6, 1995.

278

Jack W. Connor, Uniontown, for appellant.

Peter U. Hook, Assistant District Attorney, Uniontown, Robert A. Graci, Deputy Attorney General, Harrisburg, for Commonwealth appellee.

Before ROWLEY, President Judge, and CAVANAUGH, BECK, TAMILIA, KELLY, JOHNSON, HUDOCK, FORD ELLIOTT and SAYLOR, JJ.

HUDOCK, Judge:

This is an appeal from the judgments of sentence imposed following a jury trial in which Appellant was convicted of first degree murder, robbery, theft by unlawful taking or disposition, and receiving stolen property.[1] We granted *en banc* review to determine the applicability of our Supreme Court's decision in *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994), which found Section 5704(2)(ii) of the Wiretapping and Electronic Surveillance Control Act (Wiretap Act), 18 Pa.

---

1. 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), 3921(a) and 3925(a), respectively.

C.S.A. sections 5701 *et seq*, violative of Article I, Section 8 of the Pennsylvania Constitution unless probable cause for the consensual electronic interception inside a suspect's home was first shown to a judge of this Court. Appellant would have us apply *Brion* retroactively; the Commonwealth urges prospective application only.

Appellant was charged with the murder of Piper Newland, a correction officer for the Fayette County Prison. In the early morning hours of January 5, 1992 Ms. Newland was found lying face down on North Gallatin Avenue in Uniontown, Pennsylvania. The victim died at 2:42 a.m. from extensive brain hemorrhage caused by two bullets fired at close range.

Appellant's sister, Wendy Sue Kulenovic, testified that on January 4, 1992, between 6:00 and 8:00 p.m., her husband, Dwayne Kulenovic, and Appellant left her apartment located at 20½ Millview Street in Uniontown, which is located a few blocks from where the victim was found. At approximately 1:50 a.m., Appellant and Dwayne Kulenovic returned to the apartment where they stayed for a few minutes. Appellant returned between 2:15 and 2:30 a.m., awakened Wendy and confessed that he shot the black guard from the jail. Appellant was holding a cosmetic bag in his hand when he made this confession.

Paul Kuba, a friend of Appellant's, received a tip that Appellant was involved with the murder of Ms. Newland. Kuba voluntarily went to the police and agreed to cooperate with the Fayette County District Attorney. Kuba agreed to wear an electronic transmitter while questioning Appellant about his involvement in Ms. Newland's murder. On January 27, 1992 and February 6, 1992, Kuba wore the transmitter and entered Appellant's sister's apartment. Kuba admitted that he brought beer and whiskey for Appellant on these dates to "break the ice." In a tape recorded conversation between Kuba, Appellant's sister, her husband and Appellant, Appellant confessed that he shot the victim for fifty dollars. Kuba relayed the details of this confession to the jury.

The Commonwealth played an excerpt from the tape recorded conversation between Appellant and Kuba wherein Appellant confessed to shooting the victim.

The jury found Appellant guilty of first degree murder, robbery and related theft offenses. The trial court granted Appellant's demurrer to criminal conspiracy and hindering apprehension or prosecution.[2]

In his first three questions presented, Appellant alleges that the trial court erred when it denied his motion to suppress the tape recorded conversations between himself and Paul Kuba obtained through the use of electronic surveillance.

Our standard of review when reviewing a challenge to the trial court's denial of a motion to suppress is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Morris*, 537 Pa. 417, 420–22, 644 A.2d 721, 723 (1994), *cert. den.*, —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1995). If the trial court denied the motion to suppress, we must consider only the Commonwealth's evidence and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Mayhue*, 536 Pa. 271, 299–300, 639 A.2d 421, 435 (1994). If the trial court's factual findings are supported by the record, we may only reverse if the legal conclusions drawn from those factual findings are erroneous. *Id.*

Appellant does not dispute the trial court's factual findings. Rather, he argues that this Court must reverse the trial court's erroneous legal conclusion that the tape recorded conversations obtained via electronic surveillance were properly obtained and thus admissible. Appellant contends that this Court must follow our Supreme Court's decision in *Commonwealth v. Brion, supra,* which held that "Article I, [Section] 8 of the Pennsylvania Constitution precludes the police from sending a confidential informer into the home of an individual to electronically record his conversations and transmit them back to the police." *Brion,* 652 A.2d at 287. Appellant claims

---

2. 18 Pa.C.S.A. §§ 903 and 5105(a)(3).

that *Brion* and the consolidated case of *Commonwealth v. Schaeffer*, 539 Pa. 271, 272, 652 A.2d 294 (1994), which were both decided on December 30, 1994, must be applied retroactively to his case.

In *Commonwealth v. Brion, supra,* our Supreme Court addressed the issue of whether the police may send a confidential informer into an individual's home to electronically record his conversations and transmit them back to the police without violating Article I, Section 8 of the Pennsylvania Constitution. Brion argued that to do so the police must obtain judicial authorization. The police relied on section 5704(2)(ii) of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. sections 5701–5728, which authorizes investigative or law enforcement officers or persons acting at the request of law enforcement personnel to "intercept a wire, electronic or oral communication involving suspected criminal activities" if the officer or person consents to wear a body wire. 18 Pa.C.S.A. § 5704(2)(ii). Brion argued that this procedure violated Article I, Section 8 of the Pennsylvania Constitution which "protects the right of the people to be secure from unreasonable searches and seizures[.]" *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 182, 536 A.2d 354, 355 (1987), *aff'd.,* 539 Pa. 272, 652 A.2d 294 (1994). Thus, Brion argued that his incriminating statements were illegally recorded and should be suppressed.

The trial court denied Brion's motion to suppress and the tape recorded conversation was admitted at trial. Brion was convicted of possession and delivery of marijuana. The trial court reversed its suppression ruling when presented with Brion's post-verdict motions and granted a new trial based on this Court's *en banc* decision in *Commonwealth v. Schaeffer, supra.*[3]

On appeal, a panel of this Court reversed the trial court and held that the Supreme Court's decision in *Commonwealth v.*

3. In *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (*en banc*), this Court held that the police must obtain a search warrant based on probable cause before sending a confidential informer into a person's home to electronically record one's conversation and transmit it back to police. *Id.* 536 A.2d at 355.

*Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), *aff'd.*, 494 U.S. 299 (1990), overruled our Court's *en banc* decision in *Schaeffer sub silentio*.[4] Our Supreme Court granted *allocatur* and reversed our Court's decision. The Supreme Court distinguished the holding in *Blystone* on the basis that the police informer in *Blystone* did not enter the defendant's home to electronically record his conversations. Justice Zappala, writing for the majority in *Brion*, noted:

> Unlike . . . *Blystone* . . . , the instant case involves conversations taking place in the sanctity of one's home. If nowhere else, an individual must feel secure in his ability to hold a private conversation within the four walls of his home. For the right to privacy to mean anything, it must guarantee privacy to an individual in his own home. As then-Justice Roberts stated in *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978): "Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." (Citations omitted).

*Brion*, 652 A.2d at 289 (footnote omitted).

Justice Zappala reiterated: "An individual has a constitutionally protected right to be secure in his home." *Id.* Based on this well-established principle, the majority concluded:

**4.** In *Commonwealth v. Blystone, supra,* our Supreme Court rejected the appellant's argument that a warrantless, consensual monitoring conducted in compliance with section 5704(2)(ii) of the Wiretap Act violated Article I, Section 8 of the Pennsylvania Constitution. *Blystone,* 549 A.2d at 88. The Supreme Court found the rationale in *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), *reh. denied,* 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971) (plurality opinion), persuasive where the United States Supreme Court reasoned:

> If the conduct and revelations made of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks. *Id.* at 751, 91 S.Ct. at 1126.

In *Blystone,* our Supreme Court did not address the issue as to where the defendant's conversation was intercepted and recorded. Thus, it was unclear if the Supreme Court would have ruled differently if the interception occurred in the defendant's home.

With respect to oral communications occurring within one's home, interception pursuant to 18 Pa.C.S. [Section] 5704(2)(ii) can only be deemed constitutional under Article I, Section 8 if there has been a prior determination of probable cause by a neutral, judicial authority. In light of the General Assembly's preference expressed elsewhere in the Act that probable cause determinations regarding other electronic surveillance be made by a judge of the Superior Court, 18 Pa.C.S. [Sections] 5708–5723, for consistency we believe that such procedures should be applied in fulfilling this probable cause/warrant requirement.

*Id.* 652 A.2d at 289.

Our Supreme Court did not address whether its decision in *Brion* should be retroactively applied. Appellant argues that we must apply the new law announced in *Brion* retroactively to the present appeal.

In the present case, when the trial court ruled on Appellant's post-verdict motions, the Supreme Court's decision in *Brion* had not been decided. The controlling precedent at the time was this Court's decision in *Commonwealth v. Schaeffer, supra.*[5] The trial court refused to apply our *en banc* decision in *Schaeffer* for three reasons. First, the trial court concluded that Appellant did not raise the issue that the tape recorded conversations were an illegal search and seizure pursuant to the Fourth Amendment of the federal constitution and Article I, Section 8 of the Pennsylvania Constitution either pre-trial or during trial. According to the trial court, Appellant did not raise the illegal search issue until he filed supplemental post-verdict motions. Hence, the trial court ruled that Appellant had not properly preserved this issue.

5. Appellant argued in his brief in support of his post-verdict motions that a *per curiam* order and opinion issued by our Supreme Court on June 1, 1993 were the controlling law and should be retroactively applied to his case. In that June 1, 1993 order and opinion, our Supreme Court, affirmed by an equally divided court, this Court's *en banc* decision in *Schaeffer*. Neither Appellant or the trial court recognized that our Supreme Court granted reargument in *Schaeffer* on June 25, 1993 and the June 1, 1993 order and opinion were withdrawn.

After carefully reviewing the record, we cannot agree that Appellant did not properly preserve his challenge to the illegality of the electronic surveillance based on the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. Appellant raised this issue in paragraph 16 of his omnibus pre-trial motion.

Secondly, the trial court found that the present case is not controlled by our decision in *Schaeffer* (and now *Brion*) because Appellant was not entitled to the protections of the Fourth Amendment or Article I, Section 8, since he was not in his own home when his conversations were intercepted. The trial court noted that Appellant did not permanently reside in his sister's apartment but was merely a "transient" occasional overnight guest. Therefore, the trial court reasoned that Appellant had no legitimate expectation of privacy in his sister's apartment where he "sometimes" spent the night.

Our Supreme Court has recently explained the scope of protection guaranteed by the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution in *Commonwealth v. Brundidge*, 533 Pa. 167, 620 A.2d 1115 (1993). The Court explained:

The Fourth Amendment protects: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Pa. Const. art. 1, § 8. The protection of the Fourth Amendment [and Article I, Section 8 of the Pennsylvania Constitution] does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.

An expectation of privacy is present when the individual, by his conduct, "exhibits an actual (subjective) expectation of privacy" and that the subjective expectation "is one that society is prepared to recognize as 'reasonable.'" The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. Additionally, a

determination of whether an expectation of privacy is legitimate or reasonable entails a balancing of interests.

*Id.* 620 A.2d at 1118 (citations omitted).

Applying these principles to the facts of the present case, we must determine whether Appellant had a "legitimate expectation of privacy" in his sister's apartment and whether that expectation is "one that society is prepared to recognize as 'reasonable.'" *Commonwealth v. Oglialoro,* 525 Pa. 250, 256, 579 A.2d 1288, 1290–91 (1990) ("The controlling consideration is whether the individual contesting the search and seizure entertains a legitimate expectation of privacy in the premises or area searched."). To make these determinations we must examine the totality of the circumstances regarding Appellant's presence in his sister's apartment. *Commonwealth v. Peterson,* 408 Pa.Super. 22, 26–27, 596 A.2d 172, 174 (1991), *aff'd.,* 535 Pa. 492, 636 A.2d 615 (1993).

Appellant's sister, Wendy, testified at trial that Appellant did not permanently reside with her and her husband. Instead, she explained that Appellant and his girlfriend "sometimes" stayed with them. Wendy stated that she asked Appellant to leave her apartment on the day following the murder because she did not want his girlfriend, who had run away from home, to stay with him. Appellant left his sister's apartment on the day following the murder but he returned and spent the night on several occasions after the murder. Furthermore, Appellant's girlfriend, Della Robertson, testified that she and Appellant spent the night at the Kulenovics' apartment for four or five days prior to January 4, 1992.

Despite the sparse evidence regarding Appellant's living arrangements, we find enough to conclude he had a constitutionally protected expectation of privacy in the premises searched. The trial court correctly found that Appellant did not maintain a permanent residence and was an occasional guest at his sister's apartment. Appellant apparently travelled between his sister's and brother's residences. However, Appellant's status as a transient overnight guest does not automatically defeat his expectation of privacy. Appellant

does not need a possessory interest or permanent residency in the premises searched to maintain a legitimate expectation of privacy. Our Supreme Court has recognized that an overnight guest at a host's residence may have a legitimate expectation of privacy if the guest is invited to stay at the premises. *Commonwealth v. Evans*, 488 Pa. 38, 40, 410 A.2d 1213, 1215 (1979) (citing *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)); *see also Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (overnight guest can claim a legitimate expectation of privacy in his host's home); *Peterson*, 596 A.2d at 176–77.

We find that Appellant was entitled to the constitutional protection against unreasonable searches and seizures while he temporarily resided at his sister's apartment. Appellant was legitimately at his sister's apartment when the informer entered wearing a body wire. Wendy did not deny that Appellant had her permission to stay with her and her husband. Even after Wendy learned that Appellant killed Ms. Newland, she permitted him to spend the night at her apartment. Unlike the trial court, we find the facts in *Commonwealth v. Ferretti*, 395 Pa.Super. 629, 577 A.2d 1375 (1990), *alloc. den.*, 527 Pa. 597, 589 A.2d 688 (1991), distinguishable from the present case. In *Ferretti*, this Court denied the appellant standing to object to the search of an apartment where the appellant hid after he terrorized and assaulted his ex-girlfriend. *Id.* 577 A.2d at 1381. The appellant arrived at his friend's apartment at 5:00 p.m. and stayed there until the police arrived at approximately 11:00 p.m. that same night. After obtaining a search warrant, the police entered the apartment, handcuffed and arrested the appellant and seized a sawed-off shotgun from underneath the couch. The appellant filed a motion to suppress the gun on the grounds that the search warrant was defective. The trial court denied the motion to suppress and the appellant was found guilty of burglary, simple assault and recklessly endangering his ex-girlfriend.

On appeal, this Court affirmed the trial court's ruling on the grounds that the appellant lacked standing to object to the

search and seizure of evidence. The appellant did not live at his friend's apartment nor was he an occasional overnight guest. The appellant did not have a key to the apartment and did not maintain any of his possessions there. Based on these facts, this Court held that the appellant lacked a reasonable expectation of privacy in the premises searched. *Id.*

Unlike the appellant in *Ferretti*, the evidence in the present case clearly shows that Appellant was temporarily residing at his sister's apartment where his conversations were recorded. Appellant was more than a guest visiting his sister for one evening. He had been staying there for several days in a row prior to the murder and he continued to occasionally spend the night prior to his arrest. Thus, Appellant has standing to assert a Fourth Amendment and Article 1, Section 8 claim.

Based on this conclusion, we find that the trial court erred when it concluded that the facts of *Brion* and *Schaeffer* are distinguishable from the instant case. In all three cases, the individual-appellant subject to the electronic monitoring had a legitimate expectation of privacy in the premises where the police sent an informer to intercept an oral communication regarding suspected criminal activity.

Alternatively, the trial court concluded that the law announced in the June 1, 1993 order and opinion of our Supreme Court in *Schaeffer* should not be retroactively applied. The trial court did not have to address the retroactive application of our Supreme Court's *per curiam* opinion rendered June 1, 1993 since it had been withdrawn on June 25, 1993. However, while Appellant's appeal was pending before this Court, our Supreme Court rendered a final decision in *Brion* and *Schaeffer* on December 30, 1994. Thus, we are faced with the decision whether the new rule of law announced in *Brion* and *Schaeffer* should be retroactively applied. After balancing the various criteria which influence a decision regarding retroactive application of a new rule of law, we find that the relevant factors weigh in favor of prospective application only.

The decision whether to apply a new rule of law retroactively or prospectively is a matter of judicial discretion

which must be decided on a case-by-case basis. *Blackwell v. Commonwealth, State Ethics Commission,* 527 Pa. 172, 182, 589 A.2d 1094, 1099 (1991); *August v. Stasak,* 492 Pa. 550, 553–55, 424 A.2d 1328, 1330 (1981). Neither the federal or the state constitution require or prohibit the retroactive application of a new rule of law. *Blackwell,* 589 A.2d at 1098. A court has four options available when deciding whether to apply a new rule of law retroactively. These options include: 1) the new rule of law is applied purely prospectively; 2) the new rule is applied retroactively only to the case in which the new rule is announced; 3) the new rule is applied retroactively to the case in which it is announced and to all cases pending when the decision is announced; and 4) the new rule is given full retroactive effect; that is, all litigants are entitled to the application of the new rule even if their case was final before the new law was announced. *Id.* 589 A.2d at 1098–99; *see also Commonwealth v. Geschwendt,* 500 Pa. 120, 125–28, 454 A.2d 991, 994–95 (1982) (plurality opinion).

The common law in Pennsylvania in both the civil and criminal context generally required the court to "apply the law in effect at the time of the appellate decision." *Blackwell,* 589 A.2d at 1099; *Commonwealth v. Cabeza,* 503 Pa. 228, 232–34, 469 A.2d 146, 148 (1983). This principle favoring retroactive application furthers the goal of "even-handed decision making" by guaranteeing similarly situated individuals on direct appeal the same rights. *Commonwealth v. Brown,* 494 Pa. 380, 385–87, 431 A.2d 905, 908 (1981). Accordingly, "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." *Id.* 431 A.2d at 906–07. "[U]nless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Cabeza,* 469 A.2d at 148.

Although these precedents generally favored the retroactive application of a new principle of law, Pennsylvania courts have also followed United States Supreme Court precedent and

modified the common law in various cases.[6]  For example, courts in this Commonwealth have limited the retroactive application of a new rule of law and applied a "selective retroactivity test" adopted by the United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and reaffirmed in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).  *See Commonwealth v. McFeely*, 509 Pa. 394, 399–401, 502 A.2d 167, 170 (1985); *Commonwealth v. Parker*, 435 Pa.Super. 81, 88–90, 644 A.2d 1245, 1249 (1994), *alloc. den.*, 540 Pa. 630, 658 A.2d 793 (1995).  In *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), *cert. den.*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981), the Pennsylvania Supreme Court cited the three factor analysis enunciated by the United States Supreme Court in *Stovall v. Denno, supra,* to determine when a rule of law is to be given retroactive effect.  The Pennsylvania Supreme Court explained:

> "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice." (Footnote omitted).

*Miller*, 417 A.2d at 136 (citing *Stovall v. Denno*, 388 U.S. at 297, 87 S.Ct. at 1970).  Our Supreme Court continued:

> The purpose to be served by the new rule should receive primary consideration.  "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect."  *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971) (plurality opinion).  Conversely, the same standard "strongly supports prospectivity for a decision amplifying the evi-

---

**6.** *See Commonwealth v. McCormick*, 359 Pa.Super. 461, 470–476, 519 A.2d 442, 447–449 (1986), for a chronological review of the various approaches followed by the Pennsylvania courts when deciding whether to apply a new rule of law retroactively.

dentiary exclusionary rule," *Desist [v. United States,* 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969) (plurality opinion)], the primary purpose of which is to deter unlawful police conduct.

*Miller,* 417 A.2d at 136 (footnote omitted). In other words, "[w]here the purpose of the new standard affects the truth finding function, thereby raising serious questions about the accuracy of prior guilty verdicts, the new rule has been given complete retroactive effect." *Commonwealth v. McCormick,* 519 A.2d at 447 (citing *Williams v. United States,* 401 U.S. at 653, 91 S.Ct. at 1152–53).

In *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Supreme Court of the United States announced a modified approach to the common law rule regarding retroactive application of a new rule of law. The Court explained that where a court announces a new rule of criminal procedure which represents "a clear break with the past," the new rule should be prospectively applied. *Id.* at 549, 102 S.Ct. at 2587. The Pennsylvania Supreme Court applied the rationale of *Johnson* in the case of *Commonwealth v. Geschwendt, supra.* In *Geschwendt,* the Court applied the decision in *Commonwealth v. Mulgrew,* 475 Pa. 271, 380 A.2d 349 (1977), regarding the jury instruction in insanity defense cases, prospectively because the new rule was "a clear break with the past." *Geschwendt,* 454 A.2d at 997. *See also Commonwealth v. Gray,* 509 Pa. 476, 486–88, 503 A.2d 921, 927 (1985) (decision in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which was adopted by the Pennsylvania Supreme Court was retroactively applied because it did not create any new rights in the defendant).

In the most recent case addressing retroactivity of a new rule of criminal law, *Commonwealth v. Parker, supra,* this Court considered whether our Supreme Court's decision in *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992), would be retroactively applied. *Lively* refined the evidence law regarding the admissibility of prior inconsistent statements. The Court noted the common law principle favoring retroactive application, yet recognized that "a sweeping rule of

retroactive application is not justified." *Parker,* 644 A.2d at 1249 (citing *Blackwell,* 589 A.2d at 1099). Therefore, the Court examined whether the decision in *Lively* represented a clear break with past precedent. The Court also weighed the three factors of the selective retroactive test. Combining the various approaches, the Court stated:

> [P]rospective application of judicial decisions is warranted only when all of the following conditions are met:
>
>> (1) the decision establishes a new principle of law by either overruling clear past precedent or involves an issue of first impression, the resolution of which was not clearly foreshadowed, (2) the merits of purely prospective application of the new decision outweigh the disadvantages, based on the history of the rule in question, its purpose and effect, and whether a retrospective application would retard operation of the new law, and (3) the inequity of a retroactive application of the new rule outweighs the benefit of such an application.
>
> *Batoff v. Commonwealth, Bureau of Professional and Occupational Affairs,* 158 Pa.Commw. 267, 271, 631 A.2d 781, 783 (1993), citing *Chevron Oil Co. v. Huson,* [404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971) ].

*Parker,* 644 A.2d at 1250.

Applying these principles to the facts of the present case, we find that a prospective application of *Brion* is warranted. We arrive at this conclusion after carefully examining and balancing relevant criteria including the purpose of the new rule, the reliance by law enforcement personnel on the prior law, the impact on the administration of justice, and the extent the decision was foreshadowed by prior precedent.

Our Supreme Court's rulings in *Brion* and *Schaeffer* were based on the fundamental principle that individuals are guaranteed by Article I, Section 8 of the Pennsylvania Constitution freedom from "unreasonable" governmental invasions of privacy in their own home. The purpose of requiring a "prior determination of probable cause by a neutral, judicial authority," before the police may send an informant wearing a body

wire into one's home is to protect the individual's privacy rights while in the sanctity of his own home. *Brion,* 652 A.2d at 289. The new rule of law premised on Article 1, Section 8 of the Pennsylvania Constitution, does not cure a defect in the criminal trial which affects or substantially impairs its truth-finding function, *Commonwealth v. Harper,* 512 Pa. 155, 161–63, 516 A.2d 319, 323 (1986); *Williams v. United States,* 401 U.S. at 653, 91 S.Ct. at 1152–1153, nor does it correct a "serious flaw in the fact-finding process at trial." *Stovall,* 388 U.S. at 298, 87 S.Ct. at 1970. In *Brion,* our Supreme Court was not concerned that the appellant's guilty verdict was unreliable because of the police conduct in intercepting the appellant's oral communication in his home. Appellant was duly convicted when judged by the law as it existed at the time of his trial. *See Williams,* 401 U.S. at 656, 91 S.Ct. at 1154 (petitioners were duly convicted when judged by the then-existing law; the authorities did not violate their rights before or at trial). The Court was motivated by a different policy consideration—that of protecting the constitutional guarantee enunciated in Article I, Section 8 of the Pennsylvania Constitution.

The result in *Brion* expanded the scope of the exclusionary rule; it did not enhance or assure the reliability of the appellant's trial or guilty verdict. The exclusionary rule, which was first applied to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), protects one's constitutional right against unreasonable searches and seizures by "depriving law enforcement officials of the benefits derived from using unlawfully obtained information." *Commonwealth v. Brown,* 470 Pa. 274, 282, 368 A.2d 626, 630 (1976). Applying *Brion* retroactively to the present case would not further this deterrent purpose since the police conduct, which is now declared to be unconstitutional, was not unconstitutional when it occurred. When the police intercepted Appellant's incriminating conversation with Paul Kuba, they were not obligated to appear before this Court and present probable cause to use a body wire. The police and investigative officers justifiably relied on the precise language

of section 5704(2)(ii) of the Wiretap Act which did not require a judicial determination of probable cause by this Court. The police strictly adhered to the requirements of the Wiretap Act as it was written by our Legislature. Their conduct was not unlawful until declared so by our Supreme Court when it decided *Brion* on December 30, 1994. Under these circumstances the deterrent purpose of the exclusionary rule would not be furthered by retroactively applying the *Brion* rule. Furthermore, law enforcement authorities' reliance and strict adherence to prior law weighs heavily in favor of prospective application.

The third factor in the *Stovall* test, the administrative burden associated with retroactively applying *Brion*, also supports our decision to deny Appellant the benefit of the new rule. A retroactive application of *Brion* would require new trials in all cases where the Commonwealth introduced the defendant's incriminating statements which were intercepted without a probable cause determination by this Court. We note the administrative hurdles caused by a retroactive application of a rule of criminal procedure:

> [O]rdering new trials would ... involve[ ] not only expense and effort but the inevitable risk of unavailable witnesses and faulty memories; the authorities might not have had the evidence they once had and might have been foreclosed from obtaining other evidence they might have secured had they known the evidence they were using was constitutionally suspect.

*Williams*, 401 U.S. at 654, 91 S.Ct. at 1153. These same considerations apply in the instant case and favor a prospective application.

Finally, we recognize that our Supreme Court decided an issue of first impression in *Brion* and established a "clear break" with established statutory law. Although our Supreme Court did not specifically overrule prior precedent,[7] it did add an additional requirement to section 5704(2)(ii) of the Wiretap Act in order to uphold its constitutionality under our Common-

7. *See* infra, n. 4.

wealth's Constitution. Rather than striking section 5704(2)(ii) as unconstitutional, our Supreme Court read into the statute the prerequisite that this Court find sufficient probable cause to allow an informant wearing a consensual body wire into an individual's home for the purpose of intercepting and monitoring his communications.

Moreover, the decision in *Brion* was not clearly foreshadowed. After this Court's *en banc* decision in *Schaeffer,* our Supreme Court rendered its decision in *Blystone.* *Blystone* specifically rejected the appellant's argument that section 5704(2)(ii) violated Article I, Section 8 of the Pennsylvania Constitution. *Blystone,* 549 A.2d at 86–87. In cases decided subsequent to *Blystone,* this Court interpreted *Blystone* as overruling the *en banc* decision in *Schaeffer.* This Court specifically stated in *Brion:*

> While not expressly overruling *Schaeffer,* the broad sweeping language of *Blystone* clearly overrules our prior decision. Our Supreme Court clearly did not except from its holding the factual situation where the warrantless participant monitoring occurred in the defendant's home. Therefore we must conclude that *Blystone* overrules our decision in *Schaeffer.*

*Brion,* 552 A.2d at 1108.

Our Supreme Court interpreted *Blystone* in the same manner when it rendered a *per curiam* order remanding *Commonwealth v. Barone,* 375 Pa.Super. 613, 541 A.2d 25 (1988), in *Commonwealth v. Barone,* 520 Pa. 118, 552 A.2d 1048 (1989). The Court specifically stated:

> The petition for allowance of appeal is granted, the order of the Superior Court is reversed pursuant to *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), and the case is remanded to Superior Court for further proceedings....

*Barone,* 552 A.2d at 1048.

Thus, our Supreme Court's own interpretation was that *Blystone* overruled our *en banc* decision in *Schaeffer,* thus making it difficult to foreshadow the result reached in *Brion.*

Applying a modified version of the common law and rejecting a sweeping rule of retroactive application, we conclude that the decision announced in *Brion* is to be prospectively applied and is not applicable to searches and intercepted conversations which occurred prior to December 30, 1994. Appellant is not entitled to a new trial on the basis of *Brion* since the tape recorded conversations were intercepted prior to the applicable date.

Appellant raises an additional argument as to why the tape recorded conversations between him and the informer should have been suppressed by the trial court. He alleges that the Commonwealth did not adhere to the dictates of section 5704(2)(ii) of the Wiretap Act. The relevant section of the Act provides in pertinent part:

It shall not be unlawful under this chapter for:

\* \* \* \* \* \*

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities where:

\* \* \* \* \* \*

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception shall be made unless the ... district attorney ... of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception[.]

18 Pa.C.S.A. § 5704(2)(ii).

Appellant claims that the Commonwealth failed to prove that the interception of his conversations was necessary to discover "suspected criminal activities." Appellant contends that the Commonwealth must suspect current or future criminal activity, not merely past criminal activity before obtaining the district attorney's authorization of a wiretap.

This Court specifically rejected Appellant's interpretation of "suspected criminal activities" in *Commonwealth v. Taylor*, 424 Pa.Super. 181, 622 A.2d 329 (1993). In that case this Court stated, " 'suspected criminal activities' is *not* restricted to only current and ongoing criminal activities." *Id.* 622 A.2d at 332 (emphasis added). The Court explained its rationale as follows:

> Temporal restrictions, such as "ongoing," "current," and "contemporaneous," are not suggested in the language of [Section] 5704(2)(ii). We have not adopted this limitation. Instead, we require that the Commonwealth must have "reasonable grounds" for the monitoring.

*Id.* 622 A.2d at 333. *See also Commonwealth v. Phillips*, 373 Pa.Super. 193, 200–02, 540 A.2d 933, 937 (1988) (Section 5704(2)(ii) incorporates the reasonable grounds standard); *Commonwealth v. Hassine*, 340 Pa.Super. 318, 351–53, 490 A.2d 438, 456 (1985) (court rejects the appellant's narrow interpretation of "suspected criminal activities").

In the present case the police had "reasonable grounds" to suspect that Appellant committed the murder and was continually trying to conceal such crime. We find no violation of the Wiretap Act by the Commonwealth and accordingly reject Appellant's claim that the tape recordings should have been suppressed on this ground.

In his third argument challenging the suppression ruling, Appellant claims that his due process rights were violated as a result of the police conduct during the electronic surveillance. Appellant contends that the police directly furnished him, a minor, with alcohol to induce him to make incriminating statements.

Appellant bases his claim on the principle of law that "police involvement in criminal activity can be so outrageous that a prosecution will be barred on due process grounds." *Commonwealth . v. Lindenmuth*, 381 Pa.Super. 398, 402–04, 554 A.2d 62, 64 (1989), *alloc. den.*, 522 Pa. 624, 564 A.2d 916 (1989) (citing *United States v. Twigg*, 588 F.2d 373 (3rd Cir.1978) and *Commonwealth v. Mathews*, 347 Pa.Super. 320,

500 A.2d 853 (1985)). We do not find this principle applicable to the facts of this case. The police did not directly furnish Appellant with alcohol nor did they demand that Kuba supply alcohol to Appellant to induce him to make an involuntary confession. The police actions were not "outrageous" or unlawful such that Appellant's due process rights were violated. *Compare Commonwealth v. Mathews, supra* (law enforcement officers acted outrageously in supplying money, equipment, a residence and expert advice used by appellant to illegally manufacture methamphetamine).

Finally, Appellant raises two issues with regard to the trial court's evidentiary rulings. First he claims that he should have been permitted to call Robert Phillips to testify in his defense. In his offer of proof Appellant claimed that Phillips would have testified that Dwayne Kulenovic offered to sell him a revolver on January 7, 1992, two days following the murder of Ms. Newland, and that the gun Dwayne offered to sell him was not the same gun as Commonwealth exhibit number 6. Appellant argued that this evidence was relevant to show that Dwayne possessed another gun on the night of the murder. The trial court rejected Appellant's proffer concluding that the fact that Dwayne might have possessed another gun on the night of the murder was irrelevant.

The trial court has the discretion to determine whether evidence is relevant and properly admitted. *Commonwealth v. Owens,* 437 Pa.Super. 64, 75-77, 649 A.2d 129, 135 (1994). Absent an abuse of that discretion, this Court will not reverse a trial court's decision that evidence is not relevant and thus inadmissible. *Id.*

We agree with the trial court that Phillips' proffered testimony was irrelevant to Appellant's defense. We may not consider the additional reasons why Phillips' testimony was relevant which Appellant included in his appellate brief for the first time. "The party specifying the purpose for which the testimony is admissible cannot argue on appeal that the evidence was admissible for a purpose other than that offered at trial." *Commonwealth v. Newman,* 382 Pa.Super.

220, 230–32, 555 A.2d 151, 156 (1989), *alloc. den.*, 540 Pa. 580, 655 A.2d 512 (1995). Appellant has waived any grounds, other than those raised at trial, for the admission of Phillips' testimony. *Id.*

Appellant also claims that the trial court erred by permitting the Commonwealth witnesses, Earl Mayfield and Judith Sparks, to testify. Appellant complains that neither witness could remember the exact date when Appellant and Dwayne spent the night at their house and thus should not have been permitted to testify.

In essence, Appellant challenges the weight, and not the admissibility of Mayfield and Spark's testimony. The trier of fact, not the court, must determine the credibility of the witnesses and the weight to be accorded to their testimony. *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). The jury was free to believe all, part, or none of the evidence presented by these two witnesses. *Id.* Thus, we reject Appellant's final claim.[8]

Judgments of sentence affirmed.

JOHNSON, J., files a concurring and dissenting opinion, joined by FORD ELLIOTT, J.

JOHNSON, Judge, concurring and dissenting.

I agree with my distinguished colleagues that Joseph H. Metts, at all stages of adjudication up to and including direct appeal, has properly preserved his challenge to the illegality of the electronic surveillance based upon the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. Majority Opinion at 282–283. I also agree with the thorough analysis of the Majority, which concludes that Metts had a constitutionally protected expectation of privacy in the premises searched, while he temporarily

---

8. As an alternative basis to deny Appellant's claim regarding the admissibility of Sparks' testimony, Appellant did not object to her testimony at trial and thus waived any objection. *Commonwealth v. Butts*, 495 Pa. 528, 532, 434 A.2d 1216, 1219 (1981) (party must make specific timely objection to proffered testimony at trial to preserve issue for appellate review).

resided at his sister's apartment. *Id.* at 282–287. Because Metts had a protected expectation of privacy, and because his claim of error was properly preserved at all stages of adjudication, I must respectfully dissent from my colleagues' refusal to apply the rule announced in *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994). *See also Commonwealth v. Schaeffer,* 539 Pa. 272, 652 A.2d 294 (1994) (Schaeffer II); and *Commonwealth v. Schaeffer,* 539 Pa. 271, 652 A.2d 294 (1994) (Schaeffer III).

In *Brion,* at 257, 652 A.2d at 287, our supreme court held that Article I, Section 8 of the Pennsylvania Constitution precludes the police from sending a confidential informer into the home of an individual to electronically record the conversations of that individual and transmit them back to the police. The facts in the present case are indistinguishable, in all material respects, from the facts presented in *Brion.* Therefore, the applicability of *Brion* to the present appeal is the only question remaining as to whether the contents of the intercepted conversations should have been suppressed.

I must disagree with the Majority as to our right, as an intermediate appellate court, to decide what effect should be given to a decision of the Supreme Court of Pennsylvania announcing a new rule. There is no authority for the proposition implicit in my colleagues' analysis in the Majority Opinion that an inferior court may, *sua sponte,* determine whether a decision pronounced by a higher court must be limited to a prospective application where the higher court is silent on the effect to be given to its decision. In *McHugh v. Litvin, Blumberg, Matusow & Young,* 525 Pa. 1, 10, 574 A.2d 1040, 1044 (1990), our supreme court, in a unanimous decision, declared that

> the general law of our Commonwealth continues to be, as it was at common law, that our decisions announcing changes in the law are applied retroactively, until and unless a court decides to limit the effect of the change, and that litigants have a right to rely on the change, especially if they have a suit pending in our courts at the time the change is announced.

This rule applies with equal force in criminal proceedings. *Commonwealth v. Brown*, 494 Pa. 380, 384, 431 A.2d 905, 907 (1981); *accord Commonwealth v. Cabeza*, 503 Pa. 228, 232, 469 A.2d 146, 148 (1983).

The rule that controls this case is set forth in *Cabeza, supra*. There, the Majority held that "where an appellate decision overrules prior law and announces a new principle, *unless the decision specifically declares the ruling to be prospective only*, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Id.* at 233, 469 A.2d at 148. (Emphasis added). This rule has been expressly recognized as the "third approach" of four possible approaches to apply in deciding what effect should be given to a decision announcing a new rule. *Blackwell v. Commonwealth of Pennsylvania State Ethics Commission*, 527 Pa. 172, 181–82, 589 A.2d 1094, 1099 (1991).

As the Majority points out, our supreme court, in announcing its decision in *Brion,* did not address whether that decision should be retroactively applied. Nevertheless, the Majority infers, without any explicit justification, that because the Supreme Court of Pennsylvania did not expressly deal with retroactivity in the *Brion* decision, this Court is free to apply the criteria set forth in *Blackwell* and reach its own, independent determination as to whether that decision of our higher court should be retroactively applied. Based upon the rule enunciated in *Cabeza, supra,* I believe this is error.

I recognize that a panel of this Court recently considered how a ruling of our supreme court should be applied where the higher court's ruling was silent on the issue of retroactivity. *Commonwealth v. Parker,* 435 Pa.Super. 81, 644 A.2d 1245 (1994), *appeal denied,* 540 Pa. 630, 658 A.2d 793 (1995). In *Parker,* the question was whether the decision of the Supreme Court of Pennsylvania pronounced in *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992), which was silent on the issue of retroactivity, should be applied retroactively. While the author of *Parker* ostensibly engages in a retroactivity analysis and quotes extensively from Pennsylvania Supreme Court

cases, the result in *Parker* goes no further than applying the rules set forth in *Blackwell, supra,* and the cases coming before it. Thus, *Parker* does not support the Majority's determination that this Court may engage in a retroactivity analysis and limit a Supreme Court decision to prospective application.

I have found no other case where a Pennsylvania intermediate appellate court has attempted to perform a retroactivity analysis of a decision declared by the Supreme Court of Pennsylvania. In all of the other cases relied on by the Majority, our supreme court considers the retroactive application of its own decisions or rulings, either at the time when the ruling or precedent is pronounced or shortly thereafter. *See Blackwell, supra; Cabeza, supra; August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981); *Brown, supra. See also McHugh, supra.* In none of these cases did the Supreme Court of Pennsylvania limit a precedent to prospective application where the later case had properly preserved the issue at all stages of adjudication up to and including direct appeal.

The formal purpose of the Superior Court is to maintain and effectuate the decisional law of the Supreme Court of Pennsylvania as faithfully as possible. *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985). Through its decisions in *Blackwell, Cabeza, Brown,* and *McHugh,* our supreme court has clearly declared the effect to be given the *Brion* decision. Our supreme court did not declare the rule in *Brion* to be prospective only. Therefore, the rule must be applied to all cases where the issue in question has been properly preserved. There is no dispute among the members of this Court involving the preservation of the issue. The issue has been preserved. As a result, the rule in *Brion* must be applied to this appeal. To do otherwise would constitute a usurpation of the power of the Supreme Court of Pennsylvania to decide, for itself, the effect to be given to its decisions.

Accordingly, I would reverse the judgment of sentence and grant Metts a new trial at which the intercepted conversations

would be excluded. *Brion, supra*, at 262, 652 A.2d at 290. Hence, this dissent.

FORD ELLIOTT, J., joins in this concurring and dissenting opinion by JOHNSON, J.