540 A.2d 933

COMMONWEALTH of Pennsylvania

v.

**Thomas PHILLIPS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1987.

Filed Feb. 22, 1988.

Reargument Denied April 25, 1988.

William F. Cercone, Jr., Pittsburgh, for appellant.

Kenneth K. McCann, Assistant District Attorney, Mercer, for Com., appellee.

Before BECK, JOHNSON and HESTER, JJ.

BECK, Judge:

Appellant was found guilty by a jury of unlawfully delivering and possessing cocaine. On appeal, appellant challenges the constitutionality of § 5704(2)(ii) of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.Cons. Stat.Ann. § 5701 et. seq. (Purdon 1983). In the alternative, appellant argues that the applicable requirements of the Act, even if constitutional, were not properly followed in this case. He also raises numerous allegations of trial and sentencing errors. None of these claims contain merit. We therefore affirm appellant's judgment of sentence.

Appellant's conviction followed a state and federal drug investigation in the Sharon–Farrell area of Mercer County. During the investigation, the state police used as an informant one Anthony Hueston. When the investigating officials believed that the targeted individuals would not deal

with unfamiliar persons, they directed Hueston to directly purchase the drugs. This method was used in appellant's case. The police then made the decision to equip Hueston with a body recorder during a drug transaction between Hueston and appellant. Hueston consented to wear the wire, and authorization was obtained from an Assistant Attorney General for interception. The recording itself was made during a drug transaction between Hueston and appellant while they were in appellant's car. This recording was admitted into evidence at appellant's trial.

Appellant claims that this recording should have been suppressed because the agents failed to obtain a court order to intercept the communications at issue, pursuant to 18 Pa.Cons.Stat.Ann. §§ 5708–12 (Purdon 1987). Those sections provide for authorization by a Superior Court Judge for the interception of wire or oral communications. However, since Hueston was a party to the communication and voluntarily consented[1] to wearing the body wire, no court order was necessary under the statute. Section 5704(2)(ii) provides that it is not unlawful for

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

. . . .

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General . . . or the district attorney . . . has reviewed the facts and is satisfied that the consent is

---

1. Appellant claims that Hueston did not voluntarily consent to wearing the body wire because Hueston had admitted to selling drugs while on parole and to not wanting to go back to jail. However, a decision to consent to the interception of a communication is not rendered involuntary merely because it is induced by a desire to avoid the possibility of a well-founded prosecution. *Commonwealth v. Clark*, 516 Pa. 599, 533 A.2d 1376 (1987). Moreover, the record shows that Hueston initiated his role as informant and did in fact voluntarily wear the body wire.

voluntary and has given prior approval for the interception. . . .

18 Pa.Cons.Stat.Ann. § 5704(2)(ii). Thus, § 5704 contains its own authorization requirements, which are specific to § 5704 and which supplant those found in § 5708 et seq. The Attorney General, the district attorney or their respective designees are designated by that section to approve the interception of a wire or oral communication where one party consents.

Appellant argues that § 5704 merely legalizes those interceptions made with the consent of one of the parties to the communication and does not provide for an alternative to the Superior Court approved required by § 5708. However, appellant's construction of the section does not comport with the other provisions of the Act. Section 5721 (suppression of contents of intercepted communication) provides that any aggrieved person may move to suppress the contents of an intercepted oral communication on the following ground: "(3) The interception *unless made in accordance with § 5704* . . . was not made in conformity with the order of authorization or in accordance with the requirements of § 5712. . . ." (emphasis added). 18 Pa.Cons.Stat.Ann. § 5721(a)(3) (Purdon 1983). Thus, the Act specifically precludes an aggrieved person, such as appellant, from moving to suppress the contents of a communication intercepted with the consent of the other party on the very ground asserted by appellant: that the interception was not made pursuant to a court order. Appellant's reading of § 5704 makes no sense in conjunction with this provision. Also, § 5704(2)(ii) specifically provides that the consensual interception is subject to the record keeping requirements of § 5714. Thus the section itself states the subsequent sections which are applicable to consensual interceptions of communications. In doing so, § 5704 does not apply the later sections dealing with court-ordered interceptions to consensual interceptions. Therefore, appellant's claim that a court order was necessary in this case fails. *See Com-*

▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*monwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (§ 5704 does not require the police to comply with the exacting standards of §§ 5708–5723); *Commonwealth v. Checca,* 341 Pa.Super. 480, 492, 491 A.2d 1358, 1364, *allowance of appeal denied,* 341 Pa.Super. 480, 491 A.2d 1358 (1985) (same).

▇▇▇▇▇ In the alternative, appellant argues that, by not requiring pre-interception judicial authorization, 18 Pa.Cons. Stats.Ann. § 5704(2)(ii) (Purdon 1983) offends Article 1, section 8 of the Pennsylvania Constitution.[2] Appellant argues that the interception of oral communications is a search and is therefore constitutional only when authorized by a neutral magistrate upon a showing of probable cause. The police should have therefore obtained a warrant before recording the conversations between Hueston and appellant inside appellant's car. Although we agree that the intercepting and recording of a person's words does constitute a search and seizure, we reject this argument. Rather, we hold that a warrant based on probable cause is not constitutionally mandated before the interception of oral communications, with the consent of one of the parties, is undertaken in an automobile.

In *Commonwealth v. Schaeffer,* an *en banc* panel of this Court held that the interception and recording of a person's words is a search and seizure. This Court in *Schaeffer* then proceeded to hold that Pennsylvania State Constitution requires a warrant for participant monitoring in the *home.* The home is regarded as a place in which a person's expectations of privacy are of the highest degree. A person speaking in his home certainly speaks in circumstances justifying a belief that the police are not listening in as an

---

**2.** Appellant also claims that § 5704 violates the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, the separation of powers doctrine, and Article 3, section 32 of the Pennsylvania Constitution. After an examination of the record and reading of the briefs, we find these claims to be meritless. We therefore rely on the well-written opinion of the court below in dismissing these claims.

"uninvited ear" through an alter ego, i.e., the informant. *Schaeffer*, 370 Pa.Super at 208–210, 536 A.2d at 369–370.

However, we cannot say that a person has the same expectation of privacy in his or her automobile as in the home. As the Pennsylvania Supreme Court stated in *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978), "[u]pon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." On the contrary, a diminished expectation of privacy has traditionally been accorded to automobiles because of their open construction, their function, and their subjection to myriad state regulations. *See Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987); *Commonwealth v. Timko*, 491 Pa. 32, 38, 417 A.2d 620, 623 (1980). A person does not completely exclude the world when he or she closes an automobile door. His or her sense of privacy is substantially diminished. A person cannot reasonably expect that anyone on the street to whom he or she chooses to give a ride, be it friend or hitchhiker, would be free of an electronic recording device.

The issue becomes, then, whether the search and seizure which is occurring in the automobile when a person's words are being recorded or transmitted implicates the full-blown warrant requirements. Since not every search and seizure requires a warrant, the question is whether the search is unreasonable without one. In gauging the need for a warrant, we must balance the reduced privacy expectations of a person in an automobile with the need for effective use of electronic monitoring by law enforcement officials. *See Commonwealth v. Johnston*, 515 Pa. 454, 464, 530 A.2d 74, 79 (1987).

On one hand, we need to allow the police to use the electronic monitoring devices in an efficient, effective manner. The seizure of a conversation presents problems in regard to obtaining a warrant which are not found in the case of searching a house. For example, for purposes of

the warrant, the conversations to be seized may very well be incapable of being stated with particularity as to substance, location or time. As in the case at hand, an informant who is taping a conversation on the open streets will not have the opportunity to obtain a warrant when the scene suddenly shifts to the suspect's car. Much of the law enforcement utility of the electronic participant monitoring would be lost if search warrants were required before conversations could be recorded outside the home. On the other hand, the police should not be permitted to use this crime detection device at random or without reason, or much of our freedom would be eroded.

■ Therefore, some check must be placed on the indiscriminate use of participant monitoring by the police. In *Commonwealth v. Johnston, supra,* the Pennsylvania Supreme Court found a Fourth Amendment middle ground applicable to investigations conducted by police handlers of narcotic detection dogs. Like a canine sniff search, participant monitoring is inherently less intrusive upon an individual's privacy than is a search of a person's home or body. The requirement imposed on the canine sniff searches in *Johnston* would likewise check random use of participant monitoring by the police: law enforcement officials must have reasonable grounds for believing that the participant monitoring will record criminal activity.

The statute challenged in this case incorporates this reasonable grounds standard. Section 5704 permits consensual participant monitoring where a wire or oral communication involves suspected criminal activities. 18 Pa.Cons.Stats. Ann. § 5704(2) (Purdon 1983). In granting approval for the monitoring, the Attorney General or the district attorney or their designees must review the facts. 18 Pa.Cons.Stat. Ann. § 5704(2)(ii) (Purdon 1983). Thus, the police must be able to articulate reasonable grounds for the monitoring, then the Attorney General or district attorney must find that in fact those reasonable grounds do exist. Thus, the

statute itself imposes a double check against unreasonable seizures of a person's conversations.

■ Applying this rule to the facts of this case, we find that the law enforcement officials did indeed have reasonable grounds to believe that appellant was involved in selling narcotics. The police received information that appellant was selling narcotics and, furthermore, would not sell them to any individuals he did not know. Arrangements were made to have appellant meet with Hueston for the purpose of conducting a drug transaction. An Assistant Attorney General interviewed Hueston personally before authorizing the body wire.[3] The authorization was properly given.

■ Next appellant claims that certain references to prior criminal conduct on the tape recording admitted at trial tainted his trial. The references to which appellant objects were made by the appellant during the taped drug transaction with Hueston. The references are spoken in "drug jargon" and are nearly unintelligible. However, there is a chance that a juror may have recognized the language as refering to another drug transaction. Ordinarily, the admission of testimony from which the jury may infer past criminal conduct of the defendant constitutes reversible error. *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979). All such references, however, do not warrant reversal. An isolated passing reference to prior criminal activity will not warrant reversal unless actual prejudice resulted. *Commonwealth v. Maute*, 336 Pa.Super. 394, 403, 485 A.2d 1138, 1143 (1984). No such prejudice resulted here. The references were nearly unintelligible.

---

3. Appellant's contention that the facts presented to the Attorney General's office were too scanty to demonstrate suspected criminal activity fails. Appellant bases his argument on a memorandum which was submitted to the Attorney General's office which was in fact scanty and contained misinformation. Appellant ignores the fact that, not only could the police articulate reasonable suspicion here, the Assistant Attorney General conducted a lengthy, personal interview with the informant himself. The suppression judge properly looked beyond the scope of the written document. *Commonwealth v. Checca*, 341 Pa.Super. 480, 492, 491 A.2d 1358, 1364 (1985).

The other evidence against appellant was overwhelming. He was identified by Hueston as the person who sold Hueston the cocaine. One of the state troopers corroborated crucial points of Hueston's testimony. The Commonwealth did not exploit the references.

■ Moreover, appellant was well aware of the references on the tape before the tape was played to the jury because he had been given a transcript of the tape prior to trial. In spite of this knowledge, appellant delayed his objection until after the tape was played in its entirety to the jury. A timely objection by appellant before the tape was played could have resulted in the allegedly offensive portions being removed. Moreover, appellant, for tactical reasons, declined the trial court's offer to caution the jury regarding the references. Any prejudice which may have resulted could have been remedied by such instructions. In such a case, the trial court properly refused to declare a mistrial. *Commonwealth v. Maute*, 336 Pa.Super. at 404, 485 A.2d at 1143.

Appellant also alleges the following errors: 1) a "series of prejudicial events" denied him a fair trial; 2) the suppression court relied on mistaken findings of fact; 3) hearsay was improperly admitted; and, 4) the trial court should have reopened the case to submit an exhibit to the jury.[4] After reviewing the record and reading the briefs submitted by counsel, we find no merit to any of these contentions. On these issues, we rely on the well-written opinion of the trial court in affirming appellant's judgment of sentence.

We hereby affirm appellant's judgment of sentence.

4. Appellant also challenges his sentence as being outside the sentencing guidelines. However, he has waived this challenge by failing to file in a timely manner his motion for modification of sentence under Pa.R.Crim.P. 1410 (ten days). *Commonwealth v. Broadie*, 339 Pa.Super. 394, 489 A.2d 218 (1985). We take note, however, that the sentencing court stated on the record that it was departing from the guidelines and stated its reasons for so doing. *See also Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987) (guidelines unconstitutional).