622 A.2d 329

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael TAYLOR, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 9, 1992.

Filed March 9, 1993.

Ronald Eisenberg, Deputy Dist. Atty., Philadelphia, for Com., appellant.

Burton Rose, Philadelphia, for appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

POPOVICH, Judge.

█ This is an appeal from the order of the Court of Common Pleas of Philadelphia County, which suppressed

wiretap evidence and marked currency taken from appellee.[1] The lower court concluded that the wiretap evidence was not lawfully gathered pursuant to "suspected criminal activity" within the language of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5704(2)(ii) (hereinafter "the Act"), and, therefore, the fruits resulting from the wiretapping had to be suppressed.

We, however, find that the Commonwealth acted in conformity to the language of the Act in its investigation of the appellee. Consequently, we hold that the lower court erred in its decision to suppress the wiretap evidence and marked currency. We reverse and remand for trial.

■ When passing on a challenge to the decision of the suppression court, we may consider only the evidence of defense witnesses and so much of the Commonwealth's evidence that, read in the context of the record as a whole, remains uncontradicted. We are limited primarily to questions of law, and we are bound by the suppression court's finding of fact, provided those findings are supported by the record. *Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986); *Commonwealth v. Marconi*, 408 Pa.Super. 601, 607, 597 A.2d 616, 619 (1991); *Commonwealth v. Person*, 385 Pa.Super. 197, 200, 560 A.2d 761, 762–63 (1989). Governed by the foregoing standard, our review of the record reveals the following facts.

Appellee, a former police captain, was arrested for accepting bribes from an owner of an illegal lottery operation who turned police informant. The Commonwealth contends and the lower court acknowledged that appellee may have accepted monthly protection payoffs from informant from early 1983 to about February 5, 1986. In June, 1986, informant agreed to cooperate with the investigation into appellee's suspected activities by disclosing information on his dealings with appellee. Informant told police that he paid appellee $200 every

1. Herein, the Commonwealth has certified that the suppression order in question substantially handicaps their prosecution of this case. Therefore, this appeal is properly before us. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

month for two and one-half to three years, and that appellee had assigned a code number to refer to his meetings with appellee. Informant also identified appellee's photograph as one of the officers to whom he paid the bribes.

Besides giving the police information on his dealings with the appellee, informant consented in writing to wear a body wire during two meetings with appellee which occurred on July 16 and on August 20, 1986, and to have two telephone conversations with appellee intercepted by coil recorder. Before the monitoring, however, an assistant attorney general interviewed the informant to verify that sufficient suspicion of criminal activity existed. (R. 786a) During these telephone conversations and meetings, appellee made incriminating statements with respect to his unlawful involvement with lottery operations. At both meetings, informant gave appellee $200, which appellee accepted. Immediately after the August 20 meeting, appellee was detained and taken to the Police Department Ethics Accountability Division where the marked currency was retrieved from appellee's sportscoat.

■ In determining whether the lower court's suppression of the evidence was warranted, we must interpret the meaning of "suspected criminal activity" as stated in the Act, 18 Pa.C.S.A. § 5704(2)(ii).[2] The lower court found that this

2. This section provides as follows:

§ 5704 Exceptions to prohibition on interception and disclosure of communications.

It shall not be unlawful under this chapter for:

. . . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving *suspected criminal activities* where:

. . . .

(ii) one of the parties to the communication had given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keep-

language was limited to merely current and ongoing criminal activity. It concluded that "the information amounting to probable cause sufficient to initially permit the wiretap and subsequent information derived therefrom regarding suspected criminal activity was inadequate to withstand the instant motion to suppress, and, even in the light most favorable to the Commonwealth, was at best stale." [3] Trial Court Opinion, p. 8. Thus, it suppressed the currency and the one-party consensual telephone, audio-and videotaped interceptions of the informant's conversations with appellee.

In our analysis of the Act in *Commonwealth v. Saccol*, 384 Pa.Super. 161, 557 A.2d 1095 (1989), we were guided by our supreme court's decision in *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979) which provided the proper approach to use when construing a statute:

In interpreting the statute before us, our goal is to ascertain and effectuate the intention of the legislature. In so doing we are called upon to use a common sense approach in which words and phrases are examined according to estab-

---

ing requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.
18 Pa.C.S.A. § 5704(2)(ii) (emphasis added).

**3.** The lower court determined that the information which informant disclosed to police in June, 1986 was too stale, since there was no contact between informant and appellee from February, 1986.

In his motion to suppress, appellee failed to assert specifically the argument that the information was stale, and thus "suspected criminal activity" within the meaning of § 5704(2)(ii) had not been satisfied. The claim of staleness was raised by the lower court on its own initiative nine months after the close of evidence on the defense motion. In its brief, the Commonwealth contends that the lower court had no authority to award relief on an issue raised by trial judge *sua sponte*, and that the decision below must be reversed for that reason alone. It cites as authority, *Commonwealth v. Murphy*, 305 Pa.Super. 246, 451 A.2d 514 (1983), *allocatur denied* (this Court is authorized, indeed required, to vacate lower court order in Commonwealth appeal where trial judge granted relief on an issue raised by the judge *sua sponte*). Although we may find this a sufficient basis in itself to reverse the lower court's decision, we will nevertheless address the question of whether the lower court misinterpreted "suspected criminal activity" within the meaning of § 5704(2)(ii).

lished rules of grammar and according to their common usage. We are guided by the presumptions that the legislature did not intend a result that is absurd, unreasonable or impossible of execution.

*Saccol*, 557 A.2d at 1099 (citations omitted) (quoting *Bigelow*, 399 A.2d at 394).

Applying this approach to our examination of § 5704(2)(ii), we hold that "suspected criminal activities" is not restricted to only current and ongoing criminal activities. Instead, we find that the legislature intended to give this phrase a more common meaning than as suggested by the lower court.

In *Commonwealth v. Phillips*, 373 Pa.Super. 193, 540 A.2d 933 (1988), we held that Section 5704 incorporates the reasonable grounds standard. In that case, the police received information that defendant was selling narcotics. Moreover, the police learned in their investigation that the defendant would only deal with familiar persons. The investigation officials thus directed the informant whom defendant knew to purchase the drugs directly. However, before equipping informant with a body recorder during a drug transaction between informant and defendant, an assistant attorney general conducted an interview with the informant to verify that reasonable ground existed for the monitoring. We concluded that the authorization was properly granted. *Id.*, 540 A.2d at 937.

In the instant case, we are presented with facts that are analogous to those involved in *Phillips*. Here, the police received information that appellee was accepting bribes in exchange for providing protection to illegal lottery operations. The police learned in their investigation that appellee and the informant knew each other and had conducted illegal dealings for two and one-half to three years. Informant told the investigating officers that the appellee had assigned a code number to refer to his meetings with appellee. Informant also identified appellee's photograph as one of the officers to whom he paid the bribes. Furthermore, prior to his consensual wearing of a body wire and recording of phone calls, an assistant district attorney interviewed the informant to deter-

mine that suspected criminal activity existed in the case. (R. 786a)

In *Phillips*, we set forth the standard that should be applied by courts when evaluating whether the facts in a given case warrant "suspected criminal activities." 540 A.2d at 937.

Section 5704 permits consensual participant monitoring where a wire or oral communication involves suspected criminal activities. In granting approval for the monitoring, the Attorney General or the district attorney or their designees must review the facts. Thus, the police must be able to articulate reasonable grounds for the monitoring, then the Attorney General or district attorney must find that in fact those reasonable grounds do exist. Thus, the statute itself imposes a double check against unreasonable seizures of a person's conversations.

*Id.* (citations omitted).

■■■ This Court has consistently found that the stringent requirements which are needed to satisfy probable cause are not applicable in *consensual surveillance cases*. *Commonwealth v. Barone*, 383 Pa.Super. 283, 556 A.2d 908 (1989); *Commonwealth v. Rodriquez*, 356 Pa.Super. 543, 549, 515 A.2d 27, 30 (1986), affirmed, 519 Pa. 415, 548 A.2d 1211 (1988), overruled on other grounds, 370 Pa.Super. 179, 536 A.2d 354 (1987) other grounds overruled *sub silento* 519 Pa. 450, 549 A.2d 81 (1988) (no requirement in consensual cases that the target be identified or that probable cause to intercept a particular communication exists); *Commonwealth v. Checca*, 341 Pa.Super. 480, 492, 491 A.2d 1358, 1364 (1985) (surveillance conducted with the consent of a party to the conversation is not subject to the exacting standards of authorization required for non-consensual surveillance under the Wiretap Act).[4]

---

4. In its opinion, the lower court cites as authority, *Commonwealth v. Doty*, 345 Pa.Super. 374, 498 A.2d 870 (1985) and *Commonwealth v. Hashem*, 526 Pa. 199, 584 A.2d 1378 (1991), and concludes that the facts in this case did not satisfy the requirements of the Act. Trial Court Opinion, pp. 8–11. However, both *Doty* and *Hashem* involved non-consensual surveillance of the defendant. Non-consensual surveillance requirements are addressed by the Act under sections outside the

Applying the above-discussed principles to this case, we conclude that the lower court erred in its analysis of § 5704(2)(ii), and thus the wiretap evidence and marked currency should not have been suppressed. Temporal restrictions, such as "ongoing," "current," and "contemporaneous," are not suggested in the language of § 5704(2)(ii). We have not adopted this limitation. Instead, we require that the Commonwealth must have "reasonable grounds" for the monitoring. *Phillips*, 540 A.2d at 937; *See also, Commonwealth v. Hassine*, 340 Pa.Super. 318, 351–352, 490 A.2d 438, 456 (1985) (appellant's narrow interpretation of the term "suspected criminal activities" not accepted); *Commonwealth v. Harvey*, 348 Pa.Super. 544, 554, 502 A.2d 679, 684 (1985), overruled on other grounds, 370 Pa.Super. 179, 536 A.2d 354 (1987) other grounds overruled *sub silento* 519 Pa. 450, 549 A.2d 81 (1988) (reject defendant's argument that § 5704(2)(ii) is invalid because it lacks restrictive guidelines).

■ Instantly, we find that "reasonable grounds" for the consensual wire-tap existed. The Commonwealth conducted its investigation of the appellee in accordance with the language of the Act. Prior to monitoring the telephone conversations and the meetings between appellee and informant, the informant provided the police with abundant information on his illegal dealings with appellee which existed for nearly three years. Moreover, an assistant attorney general interviewed the informant to verify that reasonable grounds for the monitoring existed. Therefore, the consensual telephone, audio-and videotaped interceptions of the informant's conversa-

scope of § 5704. Hence, our analysis in both *Doty* and *Hashem* is inapplicable to this case, since, here, we are presented with consensual surveillance. Under the Act, the requirements for the authorization of non-consensual monitoring are much more stringent than for consensual. Our supreme court has ruled "[w]here a section of a statute 'contains a given provision, the omission of such provision from a similar [section] is significant to show a different intention existed.'" *Commonwealth v. Bigelow*, 484 Pa. 476, 484, 399 A.2d 392, 395 (quoting *Richerson v. Jones*, 551 F.2d 918, 928 (3rd Cir.1977)). Guided by this principle, we find that our legislature intended "suspected criminal activities" under § 5704(2)(ii) to be evaluated by a reasonableness standard rather than probable cause.

tions with appellee and the marked currency which resulted from those lawful interceptions were improperly suppressed.

We reverse and remand for trial.