**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Norman M. McMILLAN III, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 29, 2010.

Filed Jan. 24, 2011.

James J. Karl, Lancaster, for appellant.

Craig W. Stedman, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: STEVENS, GANTMAN, and FITZGERALD *, JJ.

OPINION BY STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lancaster County after Appellant Norman McMillan, III, was convicted of involuntary deviate sexual intercourse,[1] statutory sexual assault,[2] indecent assault,[3] and corruption of minors.[4] Appellant claims the trial court erred in refusing to suppress wiretap evidence gathered through an unlawful search and seizure which violated the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5704(2) ("Wiretap Act"), and the United States and Pennsylvania constitutions. We affirm.

The aforementioned charges resulted from allegations that Appellant engaged in an inappropriate sexual relationship with a minor victim, T.T. In 2004, fourteen year old T.T. joined the McCaskey High School Choir where Appellant was employed as choir director. T.T. testified that she developed a close student/teacher relationship with Appellant which allowed T.T. to "confide" in Appellant and become "com-

---

* Former Justice specially assigned to the Superior Court.

1. 18 Pa.C.S.A. § 3123(A)(7) (five counts).

2. 18 Pa.C.S.A. § 3122.1 (four counts).

3. 18 Pa.C.S.A. § 3126(A)(8).

4. 18 Pa.C.S.A. § 6301(A)(1).

fortable" around him. Appellant would often give T.T. rides home from choir practice. On one occasion when Appellant drove T.T. home, Appellant asked if he could give T.T. a "hickey." Surprised and nervous, T.T. testified that she "asked if he'd rather kiss me than give me a hickey." Appellant agreed and kissed T.T.

After this initial encounter, T.T. and Appellant's relationship became increasingly sexual in a short amount of time. In November 2005, after a choir event, Appellant took T.T. into his office in the school where they talked and kissed. After Appellant began touching T.T. and asked to perform oral sex on her, T.T. complied. The next encounter occurred sometime between January and March 2006, when T.T. met Appellant behind her home in his car. After a short period of kissing and rubbing, Appellant asked T.T. to perform oral sex on him and she complied.

Shortly thereafter, Appellant asked T.T. to go with him to his friend's home after a gospel choir concert. Once there, Appellant and T.T. performed oral sex on each other and engaged in vaginal intercourse. In the next several weeks, T.T. testified that, on three other occasions, she had oral sex and sexual intercourse with Appellant at his friend's home or at Appellant's home.

As rumors spread about their sexual encounters, Appellant and T.T. ceased seeing each other. Appellant told T.T. if she ever wanted to talk to anyone about their relationship, she should let him know before she told anyone. When Appellant's employment with McCaskey High School ended in 2006, T.T. lost contact with Appellant. T.T. testified that she did not tell anyone about her sexual encounters with Appellant because she was scared that the release of such information would ruin her reputation and would cause her to become depressed. After T.T.'s aunt, C.T., re-

peatedly questioned her about these allegations, T.T. finally told C.T. about all the events that had occurred. C.T. promptly notified police.

T.T. and C.T. met with Detective Andrew Morgan to report the aforementioned allegations. Detective Morgan contacted wiretap-certified Detectives Robert Deeter and Matthew Blake to set up a phone interception with Appellant. The three detectives compiled an Officers' Memorandum which contained T.T.'s allegations and set forth the reasons a wiretap was necessary. On May 1, 2008, Detective Deeter set up a meeting with T.T., C.T., and Assistant District Attorney Todd Kriner. ADA Kriner reviewed the detectives' memorandum, spoke with the detectives and the victim, and met with the victim privately to ensure that her consent to the wiretap interception was knowing, voluntary, and of her free will.

After ADA Kriner approved the wiretap, the detectives intercepted a phone call between T.T. and Appellant on May 9, 2008. After T.T. indicated she was upset about the rumors circulating about their sexual encounters, she asked Appellant if he had told anyone about them. Appellant repeatedly denied telling anyone, but empathized with T.T.'s feelings, especially since people were discussing the situation four years later. When asked if he had sex with any other students, Appellant answered in the negative. Appellant asked T.T. to keep him updated on the situation.

On July 21, 2008, Appellant was charged with the aforementioned offenses. Appellant filed a motion to suppress the evidence obtained from the wiretap, claiming it was unreasonable to believe that Appellant would reveal any evidence of criminal activity when Appellant had not spoken to T.T. in nearly two years. On November 10, 2009, the trial court held a suppression hearing in which Detectives Morgan, Deet-

er, and Blake, ADA Kriner, T.T. and C.T. testified. As the trial court found the Commonwealth's witnesses to be credible, the trial court subsequently denied the suppression motion. Appellant proceeded to a jury trial in which Appellant was found guilty on all counts. On March 15, 2010, Appellant received an aggregate sentence of five (5) to ten (10) years imprisonment. On April 13, 2010, Appellant filed this timely appeal.

Appellant raises one issue for our review:

DID THE [TRIAL] COURT ERR IN REFUSING TO SUPPRESS EVIDENCE THAT WAS DERIVED FROM ELECTRONIC SURVEILLANCE WHEN THE MEMORANDUM OF INTERCEPTION ISSUED PURSUANT TO THE WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT WAS NOT BASED ON REASONABLE GROUNDS?

Appellant's Brief, at 4.

In reviewing a trial court's denial of a suppression motion, our standard of review is well-established:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones,* 605 Pa. 188, 988 A.2d 649, 654 (2010) (citing *Commonwealth v. Bomar,* 573 Pa. 426, 445, 826 A.2d 831, 842 (2003)).

Our Supreme Court has recognized that Pennsylvania's Wiretap Act seeks to uphold constitutional protection of an individual's privacy:

Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these *otherwise illegal practices* and their derivative fruits may be used.

*Commonwealth v. Cruttenden,* 976 A.2d 1176, 1179 (Pa.Super.2009) (quoting *Boettger v. Loverro,* 521 Pa. 366, 370–71, 555 A.2d 1234, 1236–37 (1989) (emphasis in original), *vacated and remanded on other grounds, Easton Publishing Co. v. Boettger,* 493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (1989)).

However, the Wiretap Act contains an exception allowing law enforcement to utilize wiretaps without obtaining prior judicial approval when one of the parties to the conversation consents to the interception:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

＊ ＊ ＊

(2) Any investigative or law enforcement officer or any person acting at the

direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving *suspected criminal activities,* including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

\* \* \*

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception ...

18 Pa.C.S.A. § 5704 (emphasis added).

■ In determining whether the approval of a consensual wiretap was proper, this Court has determined that police officers must articulate "reasonable grounds" for the monitoring and the Attorney General or the district attorney must verify that that these reasonable grounds exist. *Commonwealth v. Taylor,* 424 Pa.Super. 181, 622 A.2d 329, 332 (1993) (citing *Commonwealth v. Phillips,* 373 Pa.Super. 193, 540 A.2d 933, 937 (1988)). Appellant claims that law enforcement lacked the reasonable grounds to establish that Appellant would discuss "suspected criminal activities" as required by statute. Appellant points out that the alleged criminal activity ended in June 2006 and Appellant had no contact with T.T. since September 2006. As a result, Appellant asserts it was unreasonable to believe that Appellant would discuss this remote criminal conduct

with T.T. nearly two years later (May 2008) in a telephone conversation. We disagree.

This Court has rejected the proposition that the statutory language in Section 5704 restricts "suspected criminal activities" only to "current and ongoing criminal activities." *Taylor,* 622 A.2d at 333. Noting that Section 5704 does not contain temporal restrictions such as "ongoing," "current," or "contemporaneous," this Court refused to adopt this limitation in light of the less stringent standard required for consensual surveillance cases and reiterated that only a showing of "reasonable grounds" for the wiretap is necessary. *Id.*

■ Upon our review of the statutory language, relevant case law, and the record in this case, we conclude that the detectives provided reasonable grounds that Appellant would discuss his past sexual encounters with T.T. during an intercepted phone call. Although Appellant had no contact with T.T. for over a year and a half before the interception, the detectives felt that Appellant would discuss these encounters based on Appellant and T.T.'s close relationship. Detective Morgan emphasized Appellant's role as a mentor to T.T.:

> [Question:] Did you have confidence such a communication would involve criminal activity?
>
> [Detective Morgan:] Yes.
>
> [Question]: And why is that?
>
> [Detective Morgan:] Based on my investigation, [Appellant] in this case offered himself as a mentor, advisor to the victim in the case. She had discussed many matters, personal in nature, regarding ongoing family problems and other things. And based on that relationship there, I felt [Appellant] would talk about this case if, in fact, approached by [T.T.]

N.T. Suppression Hearing, 11/10/09, at 35. Detective Morgan testified that he had no reason to believe there was any negative feelings that would prevent Appellant from speaking to T.T., especially when her stated reason for contacting him was to prevent the spread of rumors about their sexual acts. T.T. had testified that Appellant had asked her to speak with him first if she ever wanted to discuss their sexual encounters with anyone else. Further, Detective Morgan also noted he did not find T.T.'s delay in reporting the sexual acts unusual as "it is very common in sexual assault cases that long periods of time go by before the actual incident is reported, due to various reasons." *Id.* at 39. As a result, we find the detectives provided a reasonable basis for the approval of the consensual wiretap.[5]

For the aforementioned reasons, we find the trial court did not err in denying Appellant's suppression motion and we affirm the judgment of sentence.

Affirmed.

---

[5]. Even if Appellant was correct in noting that there was no reasonable basis for the wiretap, it would have been harmless error for the trial court to admit the intercepted conversation as Appellant admitted at trial that he had committed the sexual acts alleged by T.T. Appellant's sole defense at trial was that he failed to realize T.T. was not the age of consent. The information obtained from the wiretap only established that Appellant had inappropriate contact with T.T., which he conceded at trial.