J-S52009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KHALIL JOHNSON, | : | |
| | : | |
| Appellant | : | No. 375 MDA 2017 |

Appeal from the Judgment of Sentence January 25, 2017
in the Court of Common Pleas of Lackawanna County,
Criminal Division, No(s):  CP-35-CR-0001002-2016

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED OCTOBER 12, 2017**

Khalil Johnson ("Johnson") appeals from the judgment of sentence imposed following his convictions of criminal use of a communication facility, possession of a controlled substance, delivery of a controlled substance, and possession of drug paraphernalia.  *See* 18 Pa.C.S.A. § 7512(a); 35 P.S. § 780-113(a)(16), (30), (32).  We affirm.

The trial court set forth the relevant underlying facts as follows:

On October 18, 2016, following a jury trial, [Johnson] was convicted of [the above-mentioned crimes], and acquitted of false identification to law enforcement officers.  These charges arose on March 15, 2016, when the Lackawanna County District Attorney's Office Drug Unit conducted a controlled buy of heroin from [Johnson].  A confidential informant contacted [Johnson] and arranged to meet him in the parking lot of the Dollar Store in West Scranton.  [Johnson] entered her car, and she made the controlled buy.  The confidential informant had consented to having her text messages, phone calls, and conversations with [Johnson] intercepted by the District Attorney's office, so the interaction between [Johnson] and the confidential informant was recorded by the District Attorney's Office.  [The Memorandum of Approval ("Memorandum") to intercept

communications was executed on February 17, 2016, and stated that the proposed interception would occur between February 17, 2016, and March 17, 2016. Prior to trial, Johnson filed a Motion *in Limine*, seeking to exclude evidence of his recorded conversation with the confidential informant. The trial court denied the Motion.]

On January 25, 2017, [Johnson] was sentenced to 33 months to 12 years [in prison], followed by 2 years of probation.

Trial Court Opinion, 4/21/17, at 1-2.

Johnson filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Johnson raises the following question for our review:

A. Whether the trial court erred when it denied [Johnson's] Motion *in Limine* to exclude evidence of the recorded in-person conversation between [Johnson] and a [c]onfidential [i]nformant taken inside the [c]onfidential [i]nformant's vehicle on March 15, 2016[,] for the following reasons:

1. The intercept was not supported by reasonable grounds to suspect criminal activity;

2. The intercept was based upon stale information;

3. The intercept was based upon a defective Memorandum [];

4. The Memorandum [] was not supported by valid consent; and

5. Because [Johnson] had a reasonable expectation of privacy, [the] Memorandum [] was insufficient to support the intercept[?]

Brief for Appellant at 4.

"When reviewing a trial court's denial of a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review."

- 2 -

***Commonwealth v. Schley***, 136 A.3d 511, 514 (Pa. Super. 2016). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Id.*** (citation omitted).

> Pennsylvania's Wiretapping and Surveillance Control Act [("Wiretap Act")],[1] is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivative fruits may be used.

> However, the Wiretap Act contains an exception allowing law enforcement to utilize wiretaps without obtaining prior judicial approval when one of the parties to the conversation consents to the interception:

> **§ 5704. Exceptions to prohibition of interception and disclosure of communications**

> It shall not be unlawful and no prior court approval shall be required under this chapter for:

> * * *

> (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

---

[1] ***See*** 18 Pa.C.S.A. § 5701, *et seq.*

* * *

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception ....

18 Pa.C.S.A. § 5704 (emphasis added).

In determining whether the approval of a consensual wiretap was proper, … police officers must articulate "reasonable grounds" for the monitoring and the Attorney General or the district attorney must verify [] that these reasonable grounds exist.

*Commonwealth v. McMillan*, 13 A.3d 521, 524–25 (Pa. Super. 2011) (citations and emphasis omitted, footnote added). Section 5704 does not contain any temporal restrictions such as "current" or "contemporaneous" with regard to "suspected criminal activities." *Id.* at 525.

Additionally, "for the purposes of 18 Pa.C.S.[A.] § 5704(2)(ii), one's consent must be given voluntarily in order for the governmental actions to be lawful." *Commonwealth v. Rodriguez*, 548 A.2d 1211, 1213 (Pa. 1988).

The voluntariness of one's consent must be the product of an essentially free and unconstrained choice by its maker. His will must not have been overborne and his capacity for self-determination critically impaired. Each case must be determined from the totality of the circumstances. Furthermore, consent is not voluntary where it is the product of coercion or duress[,]

- 4 -

either express or implied. However, a decision to consent is not rendered involuntary merely because it is induced by a desire to avoid the possibility of a well[-]founded prosecution.

***Id.*** (citations, quotation marks, brackets, and ellipses omitted).

We will address Johnson's claims together. Johnson contends that the trial court erred in denying his Motion *in Limine* to suppress the intercepted communications with the confidential informant. Brief for Appellant at 10, 12. Johnson argues that the Commonwealth, in executing the Memorandum, violated the requirements of the Wiretap Act, and that any evidence seized from the recordings should have been excluded at trial. ***Id.*** at 12-13.

First, Johnson asserts that the Memorandum failed to articulate reasonable grounds for monitoring communications, as it was vague and only stated that there was an investigation of the distribution of a controlled substance. ***Id.*** at 10, 13-14; ***see also id.*** at 13-14 (claiming that the Memorandum did not identify Johnson or the type of controlled substance under investigation).

Second, Johnson asserts that the authorization of the intercept was based upon stale information. ***Id.*** at 10, 14-15. Johnson argues that the intercept was authorized on February 17, 2016, but the sale that led to his convictions did not occur until March 15, 2016. ***Id.*** at 14. Johnson further points out that in the Memorandum, the confidential informant did not specify that she had previously bought drugs from Johnson. ***Id.***

Next, Johnson contends that the Memorandum was defective because Deputy District Attorney Mike Ossont ("Ossont") failed to adhere to the requirements set forth in section 5704(2), which safeguard against unauthorized wiretaps. *Id.* at 10, 18. Johnson claims that Ossont failed to sign the Memorandum. *Id.* at 10, 15-19. Johnson further argues that Ossont did not interview or question the confidential informant in person to determine whether the informant's consent to be recorded was freely given. *Id.* at 15-16, 18, 19, 21. Johnson also asserts that Ossont was not properly authorized by the District Attorney to approve wiretaps. *Id.* at 15, 18-19.

Johnson additionally claims that the confidential informant did not provide valid consent for the intercept. *Id.* at 10, 19-21. Johnson argues that the confidential informant's consent was involuntary because she was paid to be an informant.[2] *Id.* at 20-21. Johnson also asserts that the confidential informant did not consent to wear a wire for the drug deal. *Id.* at 21.

Finally, Johnson contends that he had a reasonable expectation of privacy in the confidential informant's vehicle, as the public could not hear the exchange. *Id.* at 10, 21, 23. Johnson further argues that "he had an expectation of privacy in his phone conversation with the [confidential informant,]" and thus, the Memorandum was insufficient to support the

_____

[2] The confidential informant was paid $100 for the completed drug transaction. *See* N.T., 10/17/16, at 40, 88, 96.

- 6 -

wiretap. *Id.* at 21-22. Johnson claims that the error was not harmless since the recorded conversations directly contributed to the verdict. *Id.* at 23-24.

The trial court addressed Johnson's claims as follows:

> [Johnson] argues that the recorded in-person conversation between [Johnson] and the confidential informant[,] taken inside of her vehicle[,] should have been excluded from evidence because it was not supported by reasonable grounds to suspect criminal activity, not supported by valid consent[,] and taken pursuant to stale information. However, the confidential informant … testified at trial that she was not forced or coerced to be a confidential informant, or to have a recording device placed in her car. [N.T., 10/17/16, at 40, 51, 69-71.] [The confidential informant] also testified that she had purchased heroin from [Johnson] in the past and could identify his voice because she had heard it before many times. *Id.* at 43, 56, 63[; *see also* Memorandum, 2/17/16, at 1 (identifying an unknown black male, known to the confidential informant as "Slim," as the target of the intercept, and stating that the intercept involved "suspected criminal activities.")]. She testified that while she consented to the recording on February 17, 2016, she was unable to make a purchase until March 15, 2016[,] because she attempted to buy heroin from him in that time period[,] but was unable to do so. [N.T., 10/17/16,] at 71. Thus, [Johnson's] assertions that the confidential informant did not consent to the recording, and that the police did not have reasonable grounds to suspect criminal activity are incorrect. Moreover, while there is not a requirement that the suspected criminal activity is ongoing or current, the gap of three weeks between the confidential informant's consent and the actual recording did not cause the information to become stale. [*See* Memorandum of Consent, 2/17/16, at 1 (wherein the confidential informant voluntarily consented to interceptions of communications with Johnson between February 17, 2016, and March 17, 2016); Officer's Memorandum, 2/17/16, at 1 (requesting that "the proposed interception to occur on 02/17/2016 THRU 03/17/2016."); *see also McMillan*, 13 A.3d at 525 (stating that "[s]ection 5704 does not contain temporal restrictions such as 'ongoing,' 'current,' or 'contemporaneous,'" and that for a consensual wiretap, only a showing of reasonable grounds is

necessary); ***Commonwealth v. Adams***, 524 A.2d 1375, 1378 (Pa. Super. 1987) (stating that section 5704(2)(ii) does not "set forth a specific length of time during which a consent remains viable."). The confidential informant] testified that she attempted to purchase heroin in that time period but was unable to do so.

[Johnson] also asserts that the Memorandum [] for the recording was defective because it was not signed by the Assistant District Attorney, was defective on its face because it included a date after the date of the Memorandum, and because the Assistant District Attorney was not authorized to approve the Memorandum. [Johnson] made this assertion during the argument on the [M]otion *in* [*L*]*imine*, but [the trial] court denied the [M]otion and found that the questionable date in the Memorandum was almost certainly a clerical error, and that [Johnson] could cross[-]examine regarding the dates and the accuracy of the information. ***Id.*** at 3-4. At trial, Detective John Munley [("Detective Munley")] testified that [] Ossont oversees the Drug Unit at the District Attorney's Office and approves [the] electronic surveillance by the office. ***Id.*** at 91. He testified that the confidential informant in this case was consensualized by [] Ossont over the telephone and that [] Ossont went over the authorization to intercept communications with her to make sure that she was doing this of her own free will and understood everything else in the Memorandum[,] and that [] Ossont approved the interception over the telephone. ***Id.*** at 90-91. [Detective Munley] testified that the reference in the Memorandum [] to the date of the Officer's Memorandum as March 30, 2016, was a typographical error on his part and that the date should have been February 17, 2016. ***Id.*** at 142. He also testified that he wrote [] Ossont's name on the form because the interview with the confidential informant was conducted by telephone. ***Id.*** [Johnson's] attorney cross[-]examined Detective Munley on these points at length, but did not establish that the Memorandum [] was invalid and that the recording should have been excluded.

Finally, [Johnson] argues that the interception of his conversation with the confidential informant violated his expectation of privacy in the confidential informant's vehicle. However, a defendant does not have an expectation of privacy in a confidential informant's vehicle or an expectation that the words spoken to a confidential informant will not be intercepted.

> [*See*] ***Commonwealth v. Bender***, 811 A.2d 1016[, 1023] (Pa.
> Super. 2002) [(concluding that the defendant had no reasonable
> expectation of privacy during conversation in the consenting
> informant's vehicle); ***see also Rodriguez***, 548 A.2d at 1212-13
> (stating that one-party consensual wiretapping, as authorized by
> section 5704(2)(ii), does not violate the Fourth Amendment or
> Article I, Section 8 of the Pennsylvania Constitution).] Thus, the
> recording of [Johnson's] conversation with the confidential
> informant inside of her vehicle was not excludable[,] and th[e
> trial] court properly denied [Johnson's] [M]otion *in* [*L*]*imine*.

Trial Court Opinion, 4/21/17, at 3-5. Because the trial court's findings are supported by the record, and its legal conclusions are sound, we adopt its reasoning for the purpose of this appeal, ***see id.***, with the following addendum.

Although the confidential informant was paid for the completed drug transaction, this economic incentive did not vitiate her consent and cannot be deemed coercive to the extent that it deprived the informant of free choice. ***See Rodriguez***, 548 A.2d at 1213. Further, the fact that Ossont determined the voluntariness of the confidential informant's consent and approved the intercept over the phone did not violate the requirements of section 5702(2)(ii). ***See Adams***, 524 A.2d at 1377-78 (concluding that the trial court properly denied the motion to suppress where the deputy attorney general interviewed the confidential informant over the phone to determine

the voluntariness of the informant's consent regarding the interceptions).[3]

Applying the above standards to the instant case, we conclude that the trial court did not abuse its discretion in finding that there were reasonable grounds for the intercept; the confidential informant voluntarily consented to the intercept; and Ossont properly authorized the intercept, thereby justifying the admission of Johnson's statements.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017

---

[3] We note that the confidential informant independently corroborated the information regarding the sale of heroin contained in the recordings. **See** N.T., 10/17/16, at 58, 60 (wherein the confidential informant testified that Johnson sold her two bags of heroin in exchange for $20 while in the informant's vehicle); **see also id.** at 46-52 (wherein the confidential informant discussed the set-up of the deal, and the police providing her with money to buy the heroin).